# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | CASE NO. 8:11CR342 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| MAGDA MORALES-COSIO, | ) | |
| Defendant. | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 25) issued by Magistrate Judge Thomas D. Thalken recommending that the motion to suppress (Filing No. 15) filed by the Defendant, Magda Morales-Cosio, be denied. Morales-Cosio filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 26, 27) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Thalken provided a detailed account of the events surrounding ICE's I-9 audit at the Quality Pork International ("QPI") plant that led to ICE's visit to the plant and, ultimately, to Morales-Cosio's questioning and arrest. The Court has considered the transcript of the hearing conducted by Judge Thalken. There are no objections to Judge

Thalken's factual findings, and based on a de novo review of the record the Court adopts those findings.

This case involves an ICE I-9 audit at the QPI plant that resulted in the identification of an individual using the name of Roxanna Castillo as a possible identity theft suspect working at QPI. On October 4, 2011, approximately 20 ICE agents went to QPI to interview employees suspected of identity theft. The suspected employees were gathered in a training room, and one-by-one the employees were interviewed by ICE agents. When the name Roxanna Castillo was called out, the yet unidentified Defendant came forward and was interviewed by Agent David Gran in Spanish. Agent Gran asked Morales-Cosio three standard questions asked before the administration of *Miranda* warnings: her name; where she was born; and whether she had papers allowing her to be lawfully in the United States. Morales-Cosio responded that her name was Magda Morales-Cosio, she was born in Mexico, and she did not have papers allowing her to be legally in the United States. Agent Gran then arrested Morales-Cosio administratively. No further questions were asked, and no other evidence was obtained from her at the plant.

Morales-Cosio was then taken to the ICE detention office, booked, and fingerprinted. Her name and fingerprints were checked with ICE's and the FBI's automated fingerprint systems. She was processed for immigration removal proceedings. The fingerprint system revealed that she had 7 prior contacts and detentions by the U.S. Border Patrol followed by voluntary returns to Mexico.

Morales-Cosio was then charged in this Court in a two-count Indictment with misusing a Nebraska Identification card and a Social Security card for the purpose of satisfying a requirement of the Immigration and Nationality Act (Count I) and falsely

representing herself to be a United States citizen (Count II). She seeks suppression of evidence obtained following her October 4, 2011, arrest as the fruit of her allegedly illegal interrogation.[1]

Following an evidentiary hearing, Judge Thalken issued a written Findings and Recommendation. Judge Thalken concluded: Morales-Cosio was not in custody when Agent Gran asked Morales-Cosio the three background questions; and, even assuming that she was in custody and *Miranda* warnings would have been required prior to asking the three questions, the inevitable discovery doctrine applied as "ICE would have been able to establish her identity, and the information gathered following Morales-Cosio's immigration detention would be admissible in evidence and not subject to exclusion." (Filing No. 25, at 4.) Judge Thalken therefore recommends that the motion to suppress be denied.

## DISCUSSION

Morales-Cosio objects to portions of Judge Thalken's Findings and Recommendation, arguing: she was in custody when the three pre-*Miranda* questions were asked; Morales-Cosio was interrogated when asked the three pre-*Miranda* questions; and the inevitable discovery doctrine does not apply.

**Custody**

Specifically, Morales-Cosio argues that she was not free to leave the premises because, had she not answered Agent Gran's questions, he would have sought a criminal arrest warrant. Morales-Cosio's argument is not supported by case law. Employees were

---

[1]The government does not intend to use those statements and does not contest their suppression. (Filing No. 24 (Transcript of Hearing), at 2-3.) However, Judge Thalken found that the questioning was noncustodial and concluded that the statements need not be suppressed.

gathered in a conference room to meet with ICE agents and were summoned individually to answer the three pre-*Miranda* questions. There was no evidence indicating that weapons were displayed or that threats or force were used. Those facts outweigh the fact that employees were not free to leave until they spoke with the agents. *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir. 1990) (listing six factors for consideration in determining a custody issue, and emphasizing that a decision should not be reached based only on the number of factors that apply). Therefore, the Court concludes that under the evidence presented Morales-Cosio was not in custody at the QPI plant.

**Whether Questioning Was Interrogation**

Morales-Cosio argues that the questions asking for her name, country of birth, and possession of papers allowing her to be legally in the United States constituted interrogation requiring the administration of *Miranda* warnings because agents had an ulterior motive in asking those questions. The Eighth Circuit Court of Appeals has stated that routine questions for basic information needed "for basic identification purposes is not interrogation under *Miranda*, even if the information turns out to be incriminating." *United States v. McLaughlin,* 777 F.2d 388, 391-92 (8th Cir. 1985); *see also United States v. Ochoa-Gonzalez,* 598 F.3d 1033, 1039 (8th Cir. 2010). This case involves routine basic questions that led to incriminating answers and, therefore, falls within the realm of cases in which *Miranda* warnings were not required prior to the routine questioning.

**Inevitable Discovery Doctrine**

Judge Thalken found that, even assuming Morales-Cosio was entitled to *Miranda* warnings before the three questions were asked, "ICE would have been able to establish

4

her identity, and the information gathered following Morales-Cosio's immigration detention would be admissible in evidence and not subject to exclusion." (Filing No. 25, at 4.)

Under the inevitable discovery doctrine, if the government can show "by a preponderance of the evidence that the information, otherwise to be suppressed under the exclusionary rule, ultimately or inevitably would have been discovered by lawful means" the evidence is not excluded. *United States v. James,* 353 F.3d 606, 616-17 (8th Cir. 2003). The Eighth Circuit stated that in demonstrating the applicability of the inevitable discovery doctrine, the government must show: "(1) there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *Id.* at 617. Morales-Cosio argues that the government cannot meet this test.

Agent Gran testified that, had Morales-Cosio not answered the three questions, he had sufficient probable cause to make a warrantless arrest and obtain a criminal complaint and affidavit based on a Federal Trade Commission complaint regarding identity theft, Social Security records, I-9 documents, and the knowledge that the FTC complainant lived elsewhere and the Defendant was using false documents to work at QPI. (Filing No. 24, at 10-12.) Moreover, at least some of the information could have been obtained from QPI.

Agent Gran also testified that while the ICE agents went to QPI primarily with a criminal purpose, they also wore an "administrative hat." (*Id.* at 9.) This latter function was demonstrated when Morales-Cosio was arrested administratively.

In summary, the *James* requirements were satisfied and the inevitable discovery doctrine applies.

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 25) are adopted in their entirety;

2. The Defendant's objections to the Findings and Recommendation (Filing No. 26) are overruled; and

3. The Defendant's motion to suppress (Filing No. 15 ) is denied.

DATED this 20th day of January, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge